UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, | No.  2:13-CR-00398-MCE |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| LAVELLE PHILLIPS, | |
| Defendant. | |

On December 12, 2013, the grand jury returned an indictment as to Defendant Lavelle Phillips ("Defendant").  ECF No. 1.  The indictment contains two charges: (1) possession with intent to distribute cocaine base and (2) possession with intent to distribute heroin, both in violation of 21 U.S.C. § 841(a)(1).  Id.  On January 6, 2014, Defendant filed a Motion to Suppress.  Mot., Jan. 6, 2014, ECF No. 5.  Subsequently, Defendant filed an Amended Motion to Suppress ("Motion"), which seeks to suppress all evidence obtained by a search of a vehicle and a cellular telephone seized after Defendant's arrest on February 18, 2012.  Mot., Jan. 30, 2014, ECF No. 6.  The government opposed the Motion.  Opp'n, Feb. 13, 2014, ECF No. 8.

///

///

///

1    The Court held a hearing on the Motion on February 27, 2014.  At the hearing, the

2    Motion was GRANTED IN PART and DENIED IN PART; this written order follows.[1]

3

4                              **BACKGROUND**[2]

5

6    On February 18, 2012, at 8:43 PM, Officer Huff and Officer Boyce of the Vallejo

7    Police stopped Defendant, who was driving a black Lexus, for failure to have any

8    illuminated headlights or tail lights while driving at night in violation of California Vehicle

9    Code section 24250.  Defendant believes his vehicle lights were on, and the officers

10   stopped him for some other reason.  Officer Huff could smell the odor of marijuana

11   emanating from Defendant's vehicle.  Defendant, by contrast, did not smell any

12   marijuana in the vehicle.  Officer Boyce illuminated the interior of Defendant's passenger

13   compartment, and observed a one-quarter full bottle of Hennessey on the passenger

14   side rear floorboard, in violation of California Vehicle Code section 23223.  However,

15   according to Defendant, it would have been "impossible" for the officer to see the bottle

16   on the floor from his position outside the car, given the size of the vehicle's back seat.

17   Rather, according to Defendant, the officer would have needed to open the door and

18   reach his head inside the vehicle to see the bottle.

19   During his contact with Defendant, Officer Huff noticed Defendant fumbling with

20   his wallet and attempting to conceal the wallet next to his right thigh while getting out his

21   identification card.  Officer Huff directed Defendant several times to put his cellular

22   phone on the seat next to him, and to turn the car off.  However, Defendant continued to

23   attempt to use his phone.  Defendant also repeatedly reached into his pockets and

24   around the car, despite Officer Huff's instructions to put his hands on the steering wheel.

25   Due to Defendant's lack of cooperation and furtive movements, Officer Huff ordered

26   _____

     [1] To the extent that this order materially differs from the Court's ruling on February 27, 2014, the
     terms of this order control.

27

28   [2] The following recitation of facts is compiled from the various exhibits submitted in support of
     Defendant's Motion and the Government's Opposition.

                                      2

1   Defendant to put both hands on his head.  Defendant refused to put his hands on his

2   head, and instead repeatedly attempted to get his left leg out of the vehicle.  Officer Huff

3   managed to handcuff Defendant's left hand.  Defendant then charged at Officer Huff,

4   pushed him to the ground, and ran from the officers.  Officer Huff held on to the other

5   end of the handcuff and used the handcuff to pull Defendant back toward him.

6   Defendant used his free hand to repeatedly strike Officer Huff's arm in an attempt to free

7   himself of Officer Huff's hold.  At this point, Officer Boyce used his taser on Defendant.

8   The electrical current carried through Defendant and briefly shocked Officer Huff, who

9   was still holding Defendant.  The shock caused Officer Huff to release Defendant.

10  Defendant ran from the officers, but was ultimately tackled by Officer Huff.  Defendant

11  continued to struggle with the officers until he was finally subdued.  Defendant was

12  finally arrested, away from his vehicle.

13       Thereafter, the officers searched Defendant's car incident to the arrest.  The

14  officers discovered a tan Burberry satchel containing a Hello Kitty zipper bag.  Within the

15  Hello Kitty bag were several tied plastic bags.  Inside three of the plastic baggies,

16  officers discovered multiple small baggies of crack cocaine.  The total gross weight of

17  crack cocaine was 54.9 grams.  This evidence forms the basis of Count One of the

18  Indictment.  Inside two of the tied plastic bags, the officers discovered an ounce of black

19  heroin split between the two bags.  The total gross weight of the heroin was 28.1 grams.

20  This evidence forms the basis of Count Two of the Indictment.

21       The officers also searched a cell phone discovered in Defendant's vehicle.  The

22  phone contained text messages which referred to "Lavelle" and which were consistent

23  drug sales.  The phone also contained a photo of an AR-style assault rifle.

24

25                                      **STANDARD**

26

27       "The Fourth Amendment protects the 'right of the people to be secure in their

28  persons, houses, papers, and effects, against unreasonable searches and seizures.'"

3

1   <u>Davis v. United States</u>, 131 S. Ct. 2419, 2426 (2011) (quoting U.S. Const. amend. IV).

2   "[S]earches conducted outside the judicial process, without prior approval by judge or

3   magistrate, are per se unreasonable under the Fourth Amendment—subject only to a

4   few specifically established and well-delineated exceptions." <u>Arizona v. Gant</u>, 556 U.S.

5   332, 338 (2009) (quoting <u>Katz v. United States</u>, 389 U.S. 347, 356 (1967)).  Because the

6   Constitution is "silent about how this right is to be enforced[,]" the Supreme Court

7   "created the exclusionary rule, a deterrent sanction that bars the prosecution from

8   introducing evidence obtained by way of a Fourth Amendment violation." <u>Davis</u>, 131 S.

9   Ct. at 2423.

10        **A.    Search Incident to Arrest Exception**

11        "Among the exceptions to the warrant requirement is a search incident to a lawful

12   arrest." <u>Gant</u>, 556 U.S. at 338 (citing <u>Weeks v. United States</u>, 232 U.S. 383, 392 (1914)).

13   "The modern search-incident-to-arrest doctrine emerged from <u>Chimel v. California</u>."

14   <u>United States Wurie</u>, 728 F.3d 1, 3 (1st Cir. 2013) (citing <u>Chimel v. California</u>, 395 U.S.

15   752 (1969)).  In <u>Chimel</u>, the Supreme Court addressed the warrantless search of an

16   entire three-bedroom home, made pursuant to an arrest.  The Court found that the

17   search incident to arrest exception allows an arresting officer to search the person

18   arrested "to remove any weapons that the latter might seek to use in order to resist

19   arrest or effect his escape" and to "seize any evidence on the arrestee's person in order

20   to prevent its concealment or destruction."  395 U.S. at 763.  <u>Chimel</u> also held that "[t]he

21   area into which an arrestee might reach in order to grab a weapon or evidentiary items"

22   is "governed by a like rule. . . ."  <u>Id</u>.  The justifications articulated for allowing an officer to

23   search the arrestee, and the area immediately around him, were officer safety and

24   ensuring the preservation of evidence.  <u>Id</u>.  Because neither of these justifications

25   applied, the Court struck down the warrantless search of the home as a search in

26   violation of the Fourth Amendment.

27        Then, in <u>United States v. Robinson</u>, 414 U.S. 218, 220 (1973), "the Supreme

28   Court examined how the search-incident-to-arrest exception applies to searches of the

1  person." Wurie, 728 F.3d at 4 (citing Robinson, 414 U.S. 218).  Robinson concerned a

2  police officer who stopped the vehicle that the respondent, Robinson, was driving based

3  on a belief that Robinson's license had been revoked.  Robinson, 414 U.S. at 220.  After

4  Robinson exited the vehicle, the officer arrested him for operating a vehicle after license

5  revocation.  Id.  During the search of Robinson, the officer felt an object in the breast of

6  Robinson's coat.  Id.  The officer removed the item, which was a crumpled cigarette

7  package.  Id. at 223.  The officer looked inside the package and found gelatin capsules

8  of heroin.  Id.  Robinson was subsequently convicted of drug charges.  The Supreme

9  Court held that the officer's warrantless search of Robinson did not violate the Fourth

10 Amendment, and "reiterated the principle, discussed in Chimel, that '[t]he justification or

11 reason for the authority to search incident to a lawful arrest rests quite as much on the

12 need to disarm the suspect in order to take him into custody as it does on the need to

13 preserve evidence on his person for later use at trial.'" Wurie, 728 F.3d at 4 (quoting

14 Robinson, 414 U.S. at 234).  The Robinson court thus established the rule that incident

15 to a lawful custodial arrest, an officer may conduct a full search of the arrestee, including

16 any containers on his person.  Such a search is per se reasonable, and although the

17 justifications behind such a search are officer safety and preservation of evidence, the

18 officer need provide no additional justification for the search.  Robinson, 414 U.S. at 235-

19 36.  The Court therefore found that the officer's search of Robinson was a valid search

20 incident to arrest under the Fourth Amendment.

21     The Supreme Court later extended the scope of the search incident to arrest

22 doctrine to include the passenger compartment of the car and any containers within it

23 when the arrestee is an occupant, or a recent occupant of the vehicle.  New York v.

24 Belton, 453 U.S. 454 (1981).  The Court specifically addressed 'containers,' stating:

25 "police may also examine the contents of any containers found within the passenger

26 compartment, for if the passenger compartment is within reach of the arrestee, so also

27 will containers in it be within his reach." Id. at 460 (citing Robinson, 414 U.S. 218).  The

28 Court in Belton defined 'container' as "any object capable of holding another object.  It

1   thus includes closed or open glove compartments, consoles, or other receptacles

2   located anywhere within the passenger compartment, as well as luggage, boxes, bags,

3   clothing, and the like." Id. at 460 n.4.

4         Recently, Gant asked the Supreme Court to decide whether a vehicle must be

5   within an arrestee's reach to justify a vehicle search incident to arrest.  The Court held

6   that police are authorized "to search a vehicle incident to a recent occupant's arrest only

7   when the arrestee is unsecured and within reaching distance of the passenger

8   compartment at the time of the search." Gant, 556 U.S. at 343.  Additionally, the Court

9   held that "circumstances unique to the vehicle context justify a search incident to a lawful

10   arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be

11   found in the vehicle.'" Id. (quoting Thornton v. United States, 541 U.S. 615, 632 (2004)

12   (Scalia, J., concurring in judgment)).  The Court observed that "[i]n many cases, as when

13   a recent occupant is arrested for a traffic violation, there will be no reasonable basis to

14   believe the vehicle contains relevant evidence." Id. (citing Atwater v. Lago Vista, 532

15   U.S. 318, 324 (2001); Knowles v. Iowa, 525 U.S. 113, 118 (1998)).  However, "in other[ ]

16   [cases], . . . the offense of arrest will supply a basis for searching the passenger

17   compartment of an arrestee's vehicle and any containers therein." Id. at 344 (citing

18   Belton, 453 U.S. 454; Thornton, 541 U.S. 615).  Thus, in Gant, "the Court adopted a

19   new, two-part rule under which an automobile search incident to a recent occupant's

20   arrest is constitutional (1) if the arrestee is within reaching distance of the vehicle during

21   the search, or (2) if the police have reason to believe that the vehicle contains 'evidence

22   relevant to the crime of arrest.'" Davis, 131 S. Ct. at 2425 (explaining rule adopted in

23   Gant).

24       **B.**    **Automobile Exception**

25         The automobile exception is another exception to the rule requiring a warrant.

26   Supreme Court held in United States v. Ross that "[i]f there is probable cause to believe

27   a vehicle contains evidence of criminal activity, [officers may] search . . . any area of the

28   vehicle in which the evidence might be found." Gant, 556 U.S. at 347 (citing United

1    States v. Ross, 456 U.S. 798, 820-21 (1982)).  "Ross allows searches for evidence

2    relevant to offenses other than the offense of arrest, and the scope of the search

3    authorized is broader."  Id.  Warrantless searches of automobiles under the automobile

4    exception are allowed for two reasons.  First, the ready mobility of a motor vehicle

5    makes it impracticable for law enforcement officers to secure a search warrant.

6    California v. Carney, 471 U.S. 386, 390-91 (1985).  Second, individuals have a

7    diminished expectation of privacy in motor vehicles because motor vehicles are subject

8    to pervasive governmental regulation.  Id. at 391.

9        Prior to 1991, whether police needed a warrant to search a container found in a

10   car depended on whether the officer had probable cause to believe there was evidence

11   of a crime somewhere within the vehicle, or in a container within the vehicle.  Ross, 456

12   U.S. 798.  In Ross, the Court held that if an officer had probable cause to believe there

13   was contraband or evidence of a crime somewhere in a vehicle, the officer could validly

14   search every part of the vehicle, including containers that could hold the object sought.

15   Id. at 825.  However, if the officer had probably cause only to believe evidence of a

16   crime would be found in a container and nowhere else in the vehicle, then the officer

17   was required to obtain a warrant to search the container.  California v. Acevedo, 500

18   U.S. 565, 572 (1991) (explaining this rule).

19       However, in California v. Acevedo, the Court held that "the police may search an

20   automobile and the containers within it where they have probable cause to believe

21   contraband or evidence is contained."  500 U.S. at 580 (emphasis added).  Acevedo did

22   not disturb Belton's definition of "container."  Thus, if officers have probable cause to

23   believe evidence of a crime will be found in a container within a vehicle, an officer does

24   not need a warrant to search a container.  Id.  Likewise, if police have probable cause to

25   believe that evidence of a crime is somewhere inside a vehicle, they can search

26   anywhere within the vehicle—including all containers within the vehicle—that might

27   contain the object of the search.  Id.

28   ///

**ANALYSIS**

Here, Defendant seeks to suppress all evidence obtained from the officers' search of the vehicle and the cell phone, claiming that these searches violated the Fourth Amendment. The validity of each search is addressed in turn, below.

### A. Validity of the Traffic Stop

As a preliminary matter, Defendant raises a vague challenge the validity of the initial traffic stop. "An investigatory stop need not be supported by probable cause in order to comport with the Fourth Amendment. Instead, an officer may perform such a stop if he or she has a reasonable and articulable suspicion that a suspect has committed a criminal offense." United States v. Lopez, CR 07-1260 ABC, 2008 WL 1735142. *3 (C.D. Cal. Apr. 8, 2008) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968); Hayes v. Florida, 470 U.S. 811, 816 (1985)). The California Vehicle Code states that "[d]uring darkness, a vehicle shall be equipped with lighted lighting equipment as required for the vehicle by this chapter," Cal. Veh. Code § 24250, and a traffic stop for failure to have illuminated headlights is a valid investigatory stop, see, e.g., Lopez, 2008 WL 1735142 at *3-4 (citing United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000); United States v. Rojas-Millan, 234 F.3d 464, 468-69 (9th Cir. 2000)) (finding traffic stop valid investigatory stop when police officers observed defendant operating vehicle in darkness without lights illuminated). Thus, because Officers Huff and Boyce saw Defendant driving without his headlights on, the officers had "more than reasonable suspicion that [D]efendant was violating a traffic law." Lopez, 2008 WL 1735142 at *4.

The traffic stop in this case was therefore a valid investigatory stop.

### B. Search of the Vehicle

Defendant seeks to suppress the evidence obtained from the vehicle. There are two potential exceptions to the warrant requirement justifying the search conducted by the officers in this case: the search incident to arrest exception, and the automobile exception.

8

### 1. Search Incident to Arrest Exception

Defendant primarily argues that pursuant to Gant, the search of the vehicle was unlawful because Defendant was arrested outside of the vehicle for a crime not connected to the vehicle.  Here, Defendant was arrested and handcuffed prior to the search, and thus Defendant is correct that he was unquestionably not "within reaching distance of the vehicle at the time of the search."  Gant, 556 U.S at 344.  Accordingly, the officers could not validly search the vehicle under Gant's allowance for searches conducted "incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." Id. at 343.

However, according to Gant, the police may also search an automobile incident to a recent occupant's arrest "if the police have reason to believe that the vehicle contains evidence related to the crime of arrest."  Id.  In this case, the government never clearly states for what crime Defendant was arrested.[3]  However, it is clear that Officers Huff and Boyce had probable cause to arrest Defendant for possession of marijuana and/or driving under the influence, given the smell of marijuana emanating from the vehicle and the open container of alcohol visible inside the vehicle.

To the extent that Defendant was arrested for traffic violations and resisting arrest, Gant does not permit the officers to search the car, as "there will be no reasonable basis to believe the vehicle contains" evidence relevant to these offenses. Id. (citing Atwater, 532 U.S. at 324; Knowles, 525 U.S. at 118).  However, because the officers also had probable cause to arrest Defendant for driving under the influence and drug-related offenses, the officers conducted a valid search of the vehicle, as they had reason to believe the vehicle "contain[ed] evidence related to the crime of arrest."  Id.

### b. Automobile Exception

The automobile exception to the Fourth Amendment also justifies the officers'

---

[3] The government ambiguously states that "the initial vehicle code basis for the stop quickly escalated to an investigation of more serious crimes occurring, including possible drug trafficking or driving under the influence."  Opp'n at 4.

1   search.  Under Ross, once officers have "probable cause to believe a vehicle contains

2   contraband, a warrantless search of every part of that vehicle, and such contents as

3   might conceal the object of the search, is justified." United States v. Parker, 919 F.

4   Supp. 2d 1072, 1078-79 (E.D. Cal. Jan. 22, 2013) (citing Ross, 456 U.S. at 825).  "The

5   odor of marijuana emanating from a vehicle creates sufficient probable cause to justify a

6   warrantless search of the vehicle." Id. at 1079 (citing Maryland v. Dyson, 527 U.S. 465,

7   467 (1999); United States v. Ojeda–Rodriguez, 502 F.2d 560, 561 (9th Cir. 1974), cert.

8   denied, 420 U.S. 910 (1975); United States v. Barron, 472 F.2d 1215, 1217 (9th Cir.

9   1973); United States v. Chelgren, No. CR–S–10–182 KJM, 2010 WL 3210839 (E.D. Cal.

10  Aug. 10, 2010)).  Indeed, "the fact that an agent familiar with the odor of marijuana

11  smelled such an odor emanating from the automobile . . . alone was sufficient to

12  constitute probable cause for a subsequent search for marijuana." Id. (quoting Barron,

13  472 F.2d at 1217).  Accordingly, while the warrantless search in this case ensued from a

14  traffic stop, the smell of marijuana detected after the stop gave the officers probable

15  cause to search Defendant's vehicle.

16          Defendant responds that the odor of marijuana did not give Officers Huff and

17  Boyce probable cause to search the car because the officers had not yet established

18  whether Defendant possessed a medical marijuana card.  Defendant relies on Butte

19  County v. Superior Court, 175 Cal. App. 4th 729 (2009), for this proposition.  Butte held

20  that ordering a person who qualified as a medical marijuana patient to destroy marijuana

21  plants without probable cause to believe they were contraband violates due process and

22  fundamental fairness. Id. at 736-37.  The California Supreme Court has stated that "law

23  enforcement officers must have probable cause before they lawfully may arrest a person

24  for any crime.  Probable cause depends on all of the surrounding facts, including those

25  that reveal a person's status as a qualified patient or primary caregiver under [the

26  Compassionate Use Act of 1996]." People v. Mower, 28 Cal.4th 457, 468-69 (2002).

27  This rule, however, does not require that police determine whether an individual has a

28  medical marijuana card before making an arrest, or conducting a search, for possession

1   of marijuana.  Indeed, the Court is aware of no case requiring police officers to make

2   such a determination.  Rather, when officers become aware that a suspect has a

3   medical marijuana card, the officers must take that information into account when

4   determining whether there is probable cause to conduct a warrantless search or arrest

5   that individual.  For example, in <u>Butte</u>, the defendant made the officers aware that he

6   possessed a medical marijuana card, and was therefore legally entitled to possess the

7   plants that the officers sought to destroy.  175 Cal. App. 4th at 731.  The officers were

8   required to take this information into account when determining whether they had

9   probable cause to order the defendant, under the threat of prosecution and arrest, to

10   destroy the majority of the medical marijuana plants growing on his property.  <u>Id.</u> at 733.

11   <u>Butte</u> in no way requires an officer to determine whether a suspect has a medical

12   marijuana card prior to conducting a search for evidence of marijuana in the suspect's

13   vehicle when the officer has probable cause to believe the vehicle contains marijuana.

14        Accordingly, the Court finds that the officers' search of Defendant's car was made

15   pursuant to a valid exception to the warrant requirement, as there was probable cause to

16   search the vehicle based on the odor of marijuana coming from the vehicle at the time

17   the officers stopped Defendant for a traffic violation, <u>see</u> <u>Ross</u>, 456 U.S. at 825, and

18   because the officers conducted a valid search of the vehicle incident to Defendant's

19   arrest for drug-related offenses, <u>Gant</u>, 556 U.S. at 343.  The evidence obtained from the

20   search of the vehicle may therefore be used against Defendant.  The Motion to

21   Suppress this evidence is therefore DENIED.

22        **C.    Search of the Cell Phone**

23        Defendant also seeks to suppress evidence obtained from a search of his cell

24   phone, which was found in the vehicle.  Defendant contends that this evidence, including

25   several texts consistent with drug trafficking and a picture of an AR-style weapon, should

26   be suppressed as the result of an unlawful search.

27        The parties agree that the Ninth Circuit has not decided whether the police may

28   search a cell phone incident to arrest.  Defendant cites to <u>United States v. Wurie</u>, 728

11

1   F.3d 1 (1st Cir. 2013), <u>cert granted</u>, 134 S. Ct. 999 (Jan. 17, 2014), in support of his

2   position.  On the other hand, the government urges the Court to adopt the reasoning and

3   rationale of <u>United States v. Finley</u>, 477 F.3d 250, 259-60 (5th Cir. 2007), and

4   additionally cites to <u>United States v. Robinson</u>, 414 U.S. 218 (1973) in support of its

5   position.  The majority of cases addressing the issue of cell phone searches deal with

6   the problem in the context of a search incident to arrest, and generally deal with phones

7   found on the person of the arrestee.  <u>See, e.g.</u>, <u>Wurie</u>, 728 F.3d at 1 (cell phone taken

8   from defendant when he arrived at the police station); <u>Flores-Lopez</u>, 670 F.3d at 804-05

9   (cell phone records at issue taken from phone found on defendant's person that he

10  admitted was his); <u>Finley</u>, 477 F.3d at 254 (officers arrested defendant, "searched [his]

11  person and seized a cell phone that was located in his pocket."); <u>Quintana</u>, 594 F. Supp.

12  2d at 1295 (cell phone rang while defendant in custody, leading officer to "remove the

13  cell phone from [the defendant's] pocket,"); <u>United States v. Park</u>, No. CR 05–375 SI,

14  2007 WL 1521573 (N.D. Cal. May 23, 2007) (defendants' phones taken from them when

15  they were booked at police station); <u>Smallwood v. State</u>, 113 So.3d 724, 727 (2013)

16  (phone seized from defendant, searched once defendant was secured in police vehicle);

17  <u>People v. Diaz</u>, 51 Cal. 4th 84, 88 (2011) ("approximately 90 minutes after lawfully

18  arresting a suspect and transporting him to a detention facility, [officers conducted] a

19  warrantless search of the text message folder of a cell phone they [took] from his person

20  after the arrest"); <u>State v. Smith</u>, 124 Ohio St.3d 163, 163 (2009) ("police arrested [the

21  defendant] and found a cell phone on his person").

22      "The searches at issue in the cases that have arisen thus far have involved

23  everything from simply obtaining a cell phone's number, <u>United States v. Flores–Lopez</u>,

24  670 F.3d 803, 804 (7th Cir. 2012), to looking through an arrestee's call records, <u>United</u>

25  <u>States v. Finley</u>, 477 F.3d 250, 254 (5th Cir. 2007), text messages, <u>id.</u>, or photographs,

26  <u>United States v. Quintana</u>, 594 F. Supp. 2d 1291, 1295-96 (M.D. Fl. 2009)."  <u>Wurie</u>, 728

27  F.3d at 5.  In this case, however, because the phone was found in the vehicle and not on

28  Defendant's person, the Court must consider both the search incident to arrest

1  exception, as well as the automobile exception, to the warrant rule.

2  ## 1.   Search Incident to Arrest Exception

3  As set forth above, the search incident to lawful arrest doctrine allows an officer

4  who has executed a valid arrest to conduct a warrantless search of: (1) the arrestee's

5  person and the containers found on the arrestee's person, Robinson, 414 U.S. at 236;

6  (2) containers within the arrestee's wingspan, including containers within the passenger

7  compartment of the vehicle if the arrestee is an occupant of the vehicle, Gant, 556 U.S.

8  at 344; and (3) containers within the passenger compartment of the vehicle if the

9  arrestee was an occupant or recent occupant and the officer has reason to believe the

10 vehicle contains evidence of the crime of arrest, Gant, 556 U.S. at 344.  Notably, while

11 Gant changed the rule laid out in Belton, 453 U.S. 454, regarding what is required to

12 search a vehicle—and the containers therein—incident to the arrest of a recent

13 occupant, it did not change Belton's definition of 'container.'

14 Also relevant to the search of Defendant's cell phone are the limiting principles

15 put forth by the Supreme Court in United States v. Chadwick and United States v.

16 Edwards.  In Chadwick, officers seized a locked footlocker at the time of an arrest, and

17 searched the locker approximately an hour later.  433 U.S. 1 (1977).  "[T]he Court struck

18 down [such] warrantless searches of 'luggage or other personal property not

19 immediately associated with the person of the arrestee' that the police have 'reduced . . .

20 to their exclusive control,' because such searches are not necessary to preserve

21 destructible evidence or protect officer safety."  Wurie, 728 F.3d at 10 (citing Chadwick,

22 433 U.S. at 15).  By contrast, in United States v. Edwards, officers arrested the

23 defendant and took him to the police station house.  415 U.S. 800 (1974).  Ten hours

24 after the arrest, officers realized that the defendant's clothes might have paint chips on

25 them that would link the defendant to the crime.  The police therefore took the

26 defendant's clothing.  The Supreme Court held that the police had probable cause to

27 believe the defendant's clothing was evidence, and held that taking such evidence "was

28 and is a normal incident of a custodial arrest."  Id. at 805.  The officers' "reasonable

1  delay" in effectuating that search did not change that outcome.  As a result of Edwards

2  and Chadwick, "courts evaluating delayed searches incident to arrest have distinguished

3  between 'searches of the person,' such as the search of clothing in Edwards or the

4  cigarette case in Robinson, and 'searches of possession within an arrestee's control,

5  such as the footlocker in Chadwick.'"  Park, 2007 WL 1521573, at *6 (N.D. Cal. May 23,

6  2007).

7    In this case, because Defendant was arrested some distance from the vehicle, the

8  passenger compartment of the vehicle was not within Defendant's reaching distance.

9  Thus, the search of Defendant's cell phone is not justified as a search of a container

10  within the arrestee's wingspan under Gant.

11    However, the Court must also address the government's assertion that the

12  officers' search of Defendant's phone was justified under the search incident to arrest

13  exception because it was a search conducted because the officers had reason to believe

14  the vehicle contained evidence relevant to the offense of arrest.  Gant, 556 U.S. at 343.

15  In addressing this same issue, Wurie observed that "[t]he scope of a search incident to

16  arrest" should be "'commensurate with its purposes,' which include 'protecting arresting

17  officers and safeguarding any evidence of the offense of arrest that an arrestee might

18  conceal or destroy.'"  728 F.3d at 9 (quoting Gant, 556 U.S. at 339) (citing Chimel, 395

19  U.S. at 339).  In light of this principle, Wurie found that while "the searches at issue in

20  Robinson and Edwards were the kinds of reasonable, self-limiting searches that do not

21  offend the Fourth Amendment, even when conducted without a warrant[,]" the search of

22  a cell phone is a "general, evidence gathering search[], not easily subject to any limiting

23  principle," similar to the searches at issue in Chadwick and Gant which were ultimately

24  found unconstitutional.  Id. at 10.

25    This Court shares the First Circuit's concern that a rule allowing the search of cell

26  phones incident to arrest "without any showing of probable cause linked to a particular

27  place or item sought, . . . would give law enforcement automatic access to 'a virtual

28  warehouse' of an individual's 'most intimate communications and photographs without

1   probable cause' if the individual is subject to a custodial arrest, even for something as

2   minor as a traffic violation."  Id. at 9 (quoting Matthew E. Orso, Cellular Phones,

3   Warrantless Searches, and the New Frontier of Fourth Amendment Jurisprudence, 50

4   Santa Clara L. Rev. 183, 211 (2010)).

5          Because the government in this case has failed to show that the search of a cell

6   phone is necessary to protect arresting officers or to preserve destructible evidence, the

7   Court finds that the warrantless search of cell phone data, such as text messages and

8   pictures, is simply a "general, evidence gathering search," which the Supreme Court's

9   search-incident-to-arrest jurisprudence does not permit.  Accordingly, the officers' search

10  of Defendant's cell phone was invalid under the search-incident-to-arrest doctrine.

11                      **2.    Automobile Exception**

12         Because the cell phone was found not on Defendant's person, but rather as a part

13  of the officers' search of the vehicle following Defendant's arrest, the Court must also

14  consider whether the phone was properly searched under the automobile exception.

15         Here, the Court has already determined that the officers had probable cause to

16  search the vehicle, based on the smell of marijuana coming from the vehicle.  See

17  supra.  Thus, the validity of the cell phone search turns on whether a cell phone is a

18  "container," which officers can search if they have a reasonable suspicion that the car

19  contains contraband or evidence, or something requiring greater protection under the

20  Fourth Amendment.  Several courts have considered this question.  Some have

21  answered in the affirmative, finding that a cell phone is a container.  See, e.g., Finley,

22  477 F.3d 250.  However, for the reasons set forth below, this Court joins those who have

23  answered in the negative, and finds that a cell phone is not a container within the

24  meaning of the Fourth Amendment.

25         "A modern cell phone is a computer, and a computer . . . is not just another purse

26  or address book.  The storage capacity of today's cell phone is immense.  Apple's

27  iPhone 5 [and 5s] comes with up to sixty-four gigabytes of storage, which is enough to

28  hold about 'four million pages of Microsoft Word documents." Wurie, 728 F.3d at 8

1   (citations omitted).  "That information is, by and large, of a highly personal nature:

2   photographs, videos, written and audio messages (text, email, and voicemail), contacts,

3   calendar appointments, web search and browsing history, purchases, and financial and

4   medical records."  Id. (citing United States v. Cotterman, 709 F.3d 952, 957 (9th Cir.

5   2013) (en banc)).  As the Ninth Circuit stated in Cotterman, "[t]he papers we create and

6   maintain not only in physical but also in digital form reflect our most private thoughts and

7   activities."  709 F.3d at 957.  This information is certainly

8           the kind of information one would previously have stored in
    one's home and that would have been off-limits to officers
9           performing a search incident to arrest.  Indeed, modern cell
    phones provide direct access to the home in a more literal
10          way as well; iPhones can now connect their owners directly
    to a home computer's webcam, via an application called
11          iCam, so that users can monitor the inside of their homes
    remotely.
12

13  Wurie, 728 F.3d at 8 (citing Chimel, 395 U.S. 752; Flores-Lopez, 670 F.3d at 806).

14  Thus, "at the touch of a button a cell phone search becomes a house search . . . ."  Id.

15  (quoting Flores-Lopez, 670 F.3d at 806).

16      Even cell phones that are not "smart phones" have phone, text messaging, and

17  camera capabilities—just as Defendant's phone did in this case.  See Flores-Lopez, 670

18  F.3d at 806 ("Even the dumbest of modern cell phones gives the user access to large

19  stores of information."); Smith, 124 Ohio St.3d at 168 ("While it is apparent from the

20  record that Smith's cell phone could not be called a smart phone with advanced

21  technological capability, it is clear from the record that Smith's cell phone had phone,

22  text messaging, and camera capabilities.")

23      In light of these facts, Wurie emphasized that "individuals today store much more

24  personal information on their cell phones than could ever fit in a wallet, address book,

25  briefcase, or any of the other traditional containers . . . ."  728 F.3d at 9 (citing Flores-

26  Lopez, 670 F.3d at 805).  Wurie also cited the Seventh Circuit's decision in Flores-Lopez

27  for the observation that, in light of the ability to search a home via a search of a cell

28  phone, the search of a cell phone "is not a search of a 'container' in any normal sense of

1   that word . . . ." Id. (citing Flores-Lopez, 670 F.3d at 806). However, while Wurie

2   touched on the issue of whether a cell phone is a container, it did not explicitly hold that

3   cell phones are not containers. Rather, Wurie's holding rested on the broader

4   conclusion that warrantless cell phone searches incident to arrest are unconstitutional

5   under the dual rationales of Chimel. Id. at 13. By contrast, State v. Smith specifically

6   addressed whether a cell phone is a container and found that "a cell phone is not a

7   closed container for purposes of a Fourth Amendment analysis." 124 Ohio St.3d 163,

8   168 (2009). Smith recognized that "some federal courts have likened electronic devices

9   to closed containers," but found that "each of these cases . . . fails to consider the

10   Supreme Court's definition of 'container' in Belton, which implies that the container must

11   actually have a physical object within it." Smith further noted that the "pagers and

12   computer memo books of the early and mid 1990s" which have been found to be closed

13   containers "bear little resemblance to the cell phones of today. Even the more basic

14   models of modern cell phones are capable of storing a wealth of digitized information

15   wholly unlike any physical object found within a closed container." Id.

16       Here, the Court finds the reasoning of Smith and Wurie persuasive. The

17   Supreme Court defines a container as "any object capable of holding another object."

18   Belton, 435 U.S. at 460 n.4. Belton further stated that a container "thus includes closed

19   or open glove compartments, consoles, or other receptacles located anywhere within the

20   passenger compartment, as well as luggage, boxes, bags, clothing, and the like." Id. A

21   modern cell phone simply is not an object capable of holding another object, and thus is

22   not a container. Moreover, a cell phone, with its massive amounts of storage space and

23   its potential to allow the police to search not only countless documents and personal

24   information, but also the inside of the arrestee's home, is not comparable to a pager or

25   to a "computer memo book," or any other digital or electronic item which has been found

26   to be a 'container.' It is likewise not comparable to "luggage, boxes, bags, clothing, and

27   the like." While the Fourth Amendment allows police to validly search a vehicle for

28   evidence of the crime of arrest, there is no justification for a warrantless search of the

1    scope involved when searching a cell phone.

2         While other courts have held that a cell phone is a closed container within the

3    meaning of the Fourth Amendment, Finley, 477 F.3d 250, upon which the government

4    relies here, is one such case.  However, Finley is not particularly persuasive either way,

5    as the defendant in that case conceded that a cell phone is analogous to a closed

6    container, and thus the Fifth Circuit considered only whether the search of the phone

7    was a valid search incident to arrest.  447 F.3d at 260.  Given the defendant's

8    concession, the Court easily found that "no warrant was required since the search was

9    conducted pursuant to a valid custodial arrest."  Id. (citing Robinson, 414 U.S. at 235).

10   The Seventh Circuit stated that a cell phone, like a diary, "is a container of information,"

11   and recognized that "[t]he potential invasion of privacy in a search of a cell phone is

12   greater than in a search of a 'container' in a conventional sense."  670 F.3d at 805.

13   Nonetheless, the Seventh Circuit held that the search of the phone at issue in that

14   case—a search of only the phone's call history—was valid.  Id. at 809-10.  The Seventh

15   Circuit found, relying on Seventh Circuit precedent, "that warrantless cell phone

16   searches must be justified by a need to protect arresting officers or preserve destructible

17   evidence, and [found] that evidence preservation concerns outweighed the invasion of

18   privacy at issue in that case, because the search was minimally invasive . . . ." Wurie,

19   728 F.3d at 5 (citing Flores-Lopez, 670 F.3d at 806-07).

20        While a cell phone is undoubtedly a container of information and electronic data,

21   a cell phone's containment of such information does not make it "any object capable of

22   holding another object."  Belton, 435 U.S. at 460 n.4.  Simply put, information is not an

23   object.  The Seventh Circuit's view is therefore rejected.

24        Having decided that cell phones are not closed containers, "the question

25   becomes how they should be classified."  Smith, 124 Ohio St.3d at 168.  The Court

26   agrees with Smith that "although cell phones cannot be equated with laptop computers,

27   their ability to store large amounts of private data gives their uses a reasonable and

28   justifiable expectation of a higher level of privacy in the information they contain."  Id. at

169.  While the Court recognizes that United States v. Arnold upheld the warrantless

search of a laptop and its electronic contents at a border, Arnold is distinguishable.  533

F.3d 1003 (9th Cir. 2008).  In Arnold, the Ninth Circuit observed that a laptop was not

entitled to a heightened expectation of privacy because "beyond the simple fact that one

cannot live in a laptop, . . . a laptop goes with the person, and, therefore is 'readily

mobile.'"  Id. at 1009-10 (citing Carney, 471 U.S. at 391 (finding a mobile home not

entitled to a heightened expectation of privacy because it was readily mobile)).  "Second,

one's 'expectation of privacy [at the border] . . . is significantly less than that relating to

one's home or office."  Id.  However, the search at issue in Arnold is distinguishable in

two regards.  First, the search at issue in Arnold occurred at an international border,

where suspicionless searches are permitted.  Second, while it is true that a cell phone "is

not a home," a cell phone is also not a "closed container."  A cell phone occupies some

gray area in between.  Indeed, technology has changed so drastically between 2008 and

the present—let alone 2005, when the facts giving rise to Arnold took place—that the

search of a cell phone may now allow for the search of the defendant's actual home, and

not simply the search of a functional equivalent of a home.  Without further guidance

from the Supreme Court or the Ninth Circuit on this issue, this Court declines to find that

police officers may search the contents of a cell phone without a warrant.

Accordingly, the Court finds that once the cell phone is in police custody, police

must obtain a warrant before intruding into the phone's contents.

### 3.    Inevitable Discovery Doctrine

The government finally argues that the inevitable discovery doctrine allows the

evidence found in Defendant's phone to be used against the defendant.  Opp'n at 6.

The government essentially contends that because the car was validly impounded, the

phone was validly seized and searched as part of an inventory search of the vehicle.

"The inevitable discovery doctrine is an exception to the exclusionary rule."  United

States v. Ruckes, 586 F.3d 713, 718 (quoting United States v. Andrade, 784 F.2d 1431,

1433 (9th Cir.1986)).  The doctrine permits the admission of unlawfully obtained

1    evidence against a defendant if that evidence "would have been discovered absent a

2    constitutional violation." Id. (citing Nix v. Williams, 467 U.S. 431, 443 (1984)). "If the

3    prosecution can establish by a preponderance of the evidence that the information

4    ultimately or inevitably would have been discovered by lawful means . . . , then the

5    deterrence rationale [for the exclusionary rule] has so little basis that the evidence

6    should be received." Nix, 467 U.S. at 444.

7        "Under the community caretaking exception, 'police officers may impound

8    vehicles that jeopardize public safety and the efficient movement of vehicular traffic.'"

9    United States v. Cervantes, 703 F.3d 1135, 1141 (9th Cir. 2012) (quoting Miranda v. City

10   of Cornelius, 429 F.3d 858, 864 (9th Cir. 2005). "Whether an impoundment is warranted

11   under this community caretaking doctrine depends on the location of the vehicle and the

12   police officers' duty to prevent it from creating a hazard to other drivers or being a target

13   for vandalism or theft." Miranda, 429 F.3d at 864 (citing United States v. Jensen, 425

14   F.3d 698, 706 (9th Cir. 2005)). Under California law, a car may be removed by a peace

15   officer "[w]hen an officer arrests a person driving or in control of a vehicle for an alleged

16   offense and the officer is . . . required or permitted to take, and does take, the person

17   into custody." Cal. Veh. Code § 22651. "However, statutory authorization to remove a

18   vehicle, by itself, does not determine the constitutional reasonableness of the seizure."

19   United States v. Chavez, 2:09-CR-0033 FCD, 2009 WL 4282111 (E.D. Cal. Nov. 24,

20   2009) (citing Sibron v. New York, 392 U.S. 40, 61 (1968); People v. Williams, 145 Cal.

21   App. 4th 756, 762 (2006)). "The government must demonstrate that the removal of the

22   vehicle furthered a "caretaking function." Id. (citing Miranda, 429 F.3d at 865; Williams,

23   145 Cal. App. 4th at 762). "The decision to impound a vehicle must take into

24   consideration whether the vehicle was actually impeding traffic or threatening public

25   safety and convenience on the streets, such that impoundment was warranted." Id.

26       "Once a vehicle has been legally impounded, the police may conduct an inventory

27   search, as long as it conforms to the standard procedures of the local police

28   department." Cervantes, 703 F.3d at 1141 (citing South Dakota v. Opperman, 428 U.S.

364, 375–76 (1976); United States v. Wanless, 882 F.2d 1459, 1463 (9th Cir. 1989)).

The purpose of such a search is to determine the vehicle's condition and contents at the

time of impounding.  United States v. Caseres, 533 F.3d 1064, 1074 (9th Cir. 2008).

"However, 'an inventory search must not be a ruse for a general rummaging in order to

discover incriminating evidence.'" Cervantes, 703 F.3d at 1141 (quoting Florida v. Wells,

495 U.S. 1, 4 (1990)).

        The Court here finds that "a lawful inventory search does not authorize an officer

to examine the contents of a cell phone." United States v. Davis, 787 F. Supp. 2d 1165,

1170 (D. Or. 2011) (citing United States v. Wall, No. 08–60016–CR, 2008 WL 5381412,

at *3-4 (S.D. Fla. Dec. 22, 2008) (declining to justify search of cell phone as an inventory

search because the officers had no need to document the phone numbers, messages,

and other data to properly identify the suspect's property)); see also United States v.

Lustig, No. 13CR3921-BEN, 2014 WL 940502, --F. Supp.2d— (S.D. Cal. March 11,

2014).  "There are three reasons why a warrantless inventory search is permitted when a

vehicle is impounded: (1) for the protection of the vehicle owner's property; (2) for the

protection of the police from claims by the owner; and (3) for the protection of the police

from potential danger." Lustig, 2014 WL 940502 at *10 (citing Opperman, 428 U.S. at

369).  "Under Opperman, the car phone search must be conducted according to an

established policy of the law enforcement agency." Id. "If a search is conducted

according to policy, as opposed to a general rummaging for evidence, then no warrant is

necessary." Id.  (citing Cervantes, 703 F.3d at 1141).

        In this case, the law enforcement agency's policies at issue are those of the

Vallejo Police Department.  The parties in this case offer no evidence as to whether the

Vallejo Police Department has a policy of searching the contents of cell phones upon

impounding a vehicle, and "it is the government who bears the burden of demonstrating

that its search fits the inventory exception." Id. (citing Cervantes, 703 F.3d at 1142 &

n.1).

        As in Lustig,

> [w]ithout evidence that the vehicle was inventory searched according to department policy or routine, the warrantless search cannot be justified.  Moreover, even if there was a policy or established routine that was followed, it is hard to imagine how a policy that instructs law enforcement to search the digital contents of a cell phone found during the inventory search, is designed to foster the approved aims of protecting the owner against loss and protecting deputies against suit or physical danger.

Id. at *11 (citing Opperman, 428 U.S. at 369).  "The policy or practice governing inventory searches should be designed to produce an inventory."  Id. (quoting Wells, 495 U.S. at 4).  "Searching a phone's contents does not produce an inventory of property and [therefore] undermines the lawfulness of the search."  Id.

In short, "the inevitable discovery doctrine applies only when the fact that makes discovery inevitable is born of circumstances other than those brought to light by the illegal search itself."  United States v. Reilly, 224 F.3d 986, 995 (9th Cir. 2000) (citing United States v. Boatwright, 822 F.2d 862, 864-65 (9th Cir. 1987)).  In the present case "nothing outside that which occurred during the improper search" of the contents of Defendant's cell phone "supports the discovery of the challenged evidence."  Accordingly, the inevitable discovery doctrine does not apply, and Defendant's motion to suppress the evidence seized from the cell phone is GRANTED.

///

///

///

///

///

///

///

///

///

///

///

///

22

1  **CONCLUSION**

2

3        For the reasons just stated, Defendant's Motion to Suppress, ECF No. 6, is

4  GRANTED IN PART and DENIED IN PART, as follows:

5        1.      Defendant's Motion to Suppress the evidence seized from the vehicle is

6                DENIED; and

7        2.      Defendant's Motion to Suppress the evidence seized from his cell phone is

8                GRANTED.

9        IT IS SO ORDERED.

10  Dated:  March 25, 2014

11

12

13  _____
    MORRISON C. ENGLAND, JR, CHIEF JUDGE
14  UNITED STATES DISTRICT COURT

15

16

17

18

19

20

21

22

23

24

25

26

27

28